BYRON CAMPBELL *vs.* MONMOUTH MUT. FIRE INS. CO.

*Insurance. Notice. Valuation by agent—conclusiveness of on company. Instruction.*

In an action on a fire policy, if the plaintiff proves that he has seasonably given the notice called for by the contract of insurance, he is under no obligation to show that he has given the statutory notice also.

Thus, where the only stipulation in the policy of a domestic mutual fire insurance company was that the member should, " within sixty days next after the loss, give notice thereof in writing to the directors, or some one of them, or the secretary of the company;" and within three days after the loss, the policy holder notified the secretary, by a writing of that date, signed by him, of the following tenor: "I hereby notify you that my house, in Bath, was consumed by fire March 3d, at 9 o'clock P. M. Daniel Spinney's family occupied it last; they moved out February 4." *Held*, That in the absence of evidence, that he had any other house in Bath, insured by defendants, the notice was sufficient.

Section 2, c. 115, of Public Laws of 1862 (R. S. c. 49, § 18) makes the valuation of the agent only, " whose name is borne on the policy," conclusive upon the company.

In the trial of an action against a mutual company, on a fire policy conditioned that in case of gross negligence, on the part of the insured, the policy should be absolutely void, there was conflicting testimony as to the actual condition and situation of the stove, from which the fire was communicated to the building insured. The jury were instructed that gross negligence was the "utter disregard of those precautionary measures which men of ordinary prudence adopt in such a case." *Held,* That while there might be positive acts of gross negligence, which would not come within the instruction, it also impliedly required a higher degree of diligence on the part of the plaintiff than he was bound to exercise; and as this branch of the case evidently turned upon the finding as to the actual condition and situation of the stove, and not upon any nice definition of gross negligence, the exception would be overruled.

ON EXCEPTIONS, and MOTION to set aside the verdict as being against law and the weight of evidence.

ASSUMPSIT on a fire policy, the principal parts of which may be found in the opinion.

The policy bore the name of no one as agent of the company, but was simply signed by the president and countersigned by the secretary. But the application was signed by the plaintiff and written and countersigned by one Cunningham, agent of the company, resident of Bath, and authorized to collect bills, and receive applications for the company. In the application, the property insured was valued at $800, and insured for $400.

The defendants, against the seasonable objection of the plaintiff, were allowed to introduce evidence, tending to show that the value of the property insured was less than that stated in the application; and the jury were instructed that the valuation named in the application was not conclusive upon the company; but that they should ascertain the value from the evidence in the case, and, in case of a verdict for the plaintiff, give in damages an amount not exceeding two-thirds of the actual value of the property in question.

The jury returned a verdict for the plaintiff for $358.50, and the plaintiff alleged exceptions.

The defendants' exceptions, together with the other material facts, sufficiently appear in the opinion.

*Francis Adams,* for the plaintiff.

*S. & J. W. May*, for the defendants.

BARROWS, J. In May, 1864, the defendants issued a policy wherein they undertook to insure the plaintiff "against loss or damage by fire . . . to the amount of four hundred dollars upon his property situate in Bath, viz., $400 on the north half of dwellinghouse, as the same is more particularly described in his application, dated," etc., for the term of four years, "not exceeding in any case, or under any circumstances, the sum of four hundred dollars, nor more than two-thirds of the actual destructible value of the building at the time the loss may happen." It appears by uncontradicted testimony that the house was built in 1855, in the name of the plaintiff, upon a lot which he had purchased, at a cost of about twelve hundred dollars, but that his sister, Mrs. Chadbourne and her husband "turned in" labor and cash towards the erection, to the amount of $584.11, and the plaintiff considered her at that time the owner of half the house, though it does not appear that he ever made any conveyance to her of her half. Plaintiff had mortgaged the lot, and this claim, amounting with costs to about $100, Mrs. Chadbourne had acquired, prior to Oct. 10, 1859, when she gave a quitclaim deed of the whole premises to the plaintiff. But still the plaintiff says that this deed was only intended to reinstate himself and his sister, according to the original understanding, as owners each of half the house. The plaintiff appears to have occupied or rented the north half, and his sister to have had the possession of the other until February, 1866 (nearly two years after the issuing of this policy), when the plaintiff received from his sister a warranty deed of an undivided half of the whole premises, and, at the time of the fire, had the undisputed ownership and possession of the whole of the house and the lot.

It does not appear that he had any other insurance upon the house; but upon the state of facts here disclosed, the defendants claim that, if entitled to recover on the policy, he can only recover two-thirds of the actual destructible value of an undivided half of the north half, or, in other words, one-sixth instead of one-third of

his actual loss; and this is the first position taken in support of defendants' motion for a new trial.

We do not think it can be maintained. Apparently, the legal title to the whole vested in the plaintiff by Mrs. Chadbourne's quitclaim deed to him, Oct. 10, 1859. As between himself and this insurance company, the insurable interest in the whole was in him, whoever might have been equitably entitled to the money when recovered. The insurance company could have a valid lien on the property which they insured, for the record title to the whole was in the plaintiff, even while he considered his sister as the owner of one-half. And even had they held the legal title as tenants in common, it was competent for them to make a parol division, as they seem to have done, and it is not perceived that the insurance company would have any cause of complaint, or that such a merely technical misrepresentation of the title could be material or fraudulent, or contribute to the loss or materially affect the risk. We see nothing in the condition of the title to debar the plaintiff from recovering two-thirds of the value of the north half of the house, not exceeding $400,—nor anything in the amount of the verdict which would justify the inference that the jury erred in estimating it.

The plaintiff complains that the insurance company were not held to the "insurance value, $400," stated in the application drawn by their agent. But the statute makes only the doings of an agent "whose name shall be borne on the policy" conclusive upon the company as to such matters, and, in the present case, the agent's name nowhere appears upon the policy.

The ruling of the presiding judge, upon the point raised in plaintiff's exceptions, was correct, and the plaintiff must be satisfied, if upon this policy he can recover two-thirds of the destructible value of the north half of his house, as estimated by the jury.

The defendants resist his claim for even this partial indemnity, because they say:

1. He gave us no sufficient notice of the loss.

2. He forfeited his policy by a failure to pay an assessment within sixty days after notice thereof.

3. His own gross negligence was the cause of the fire.

(1) As to the notice. The plaintiff must show either such notice as has been stipulated for by the insurance company in their contract of insurance, or such as the statutes of our State declare shall be sufficient notice, whatever the stipulations in that respect may be. If he gives the notice which is called for by the contract, he is under no obligation to go further and show that he has given the statute notice also. The statute of 1861, c. 34, § 5, was not designed to lay any additional stumbling-blocks in the way of the policy holder before his case could be heard upon its merits, and it should not be so construed as to give it that effect. It does not apply to a case where, by the terms of the policy, the insurance company undertakes, upon the reception of a simple notice of the loss, to ascertain the amount by a view or in such other mode as they think proper, and, after such notice, makes no attempt to perform its part of the contract.

Looking now at the policy to ascertain the stipulations of the parties with regard to notice, we find no special provision relating to it, but a declaration that it is mutually agreed, "that said company shall be liable and holden to pay all losses in the manner provided by the act incorporating said company," . . . "and also that this policy is made . . . with reference to the provisions of the act of incorporation, and to the votes and by-laws of the company, which may be resorted to in explanation of the rights and obligations of the parties hereto in all cases not herein otherwise specially provided for." Resorting, then, to the documents referred to, we find that the only stipulation with regard to notice of loss is contained in § 7 of the act, as follows: "when any member shall sustain any loss by fire of the property so insured, the said member shall, within sixty days next after such loss, give notice thereof in writing to the directors or some one of them, or the secretary of said company, and the directors, upon a view of the same, or in such other way as they may deem proper, shall ascertain and determine the amount of said loss," etc. Two or three days after the fire this plaintiff mailed the following letter, directed to " J. G.

Blossom, secretary of the Monmouth Mutual Fire Ins. Co., Monmouth."

"SMALL POINT, March 6, 1868.

JAMES G. BLOSSOM, ESQ.,—I hereby notify you that my house in Bath was consumed by fire March the 3d, at 9 o'clock P. M. Mr. Daniel Spinney's family was the last family that occupied it; they moved out February the 4th.

Yours, truly,        BYRON CAMPBELL."

This letter seems to have been duly received by the secretary of the insurance company. The presiding judge ruled, that it was " a sufficient notice to the defendants of the plaintiff's loss, and a sufficient compliance with the statute." If it was " a sufficient notice " under § 7 of the act of incorporation, it was all that was required by the contract of the parties, and the last clause in the ruling just recited, and the various rulings and instructions on the subject of waiver of notice and preliminary proof are immaterial, and the alleged want of notice fails altogether as a ground of defense. No particular form of written notice is required by § 7. The insurance company does not require any detailed account of the circumstances of the loss, or any specific statement of the claim. They undertake upon the giving of written notice of the loss by the insured within sixty days next after such loss to the secretary or one of the directors, to ascertain and determine the amount of said loss themselves, " upon a view of the same, or in such other way as they may deem proper." The formal proofs which are made preliminary to the commencement of an action in so many policies are dispensed with,—waived in the outset in the contract itself,—and there is no occasion to resort to the statute of 1861 to prevent justice from being thwarted by burdensome and unreasonable stipulations.

The defendants' counsel say there was no notice, because the plaintiff did not say, in his letter to the secretary, whereabouts in Bath his house was located, nor give the number of his policy, nor its date, nor its amount, nor tell what particular part of his house

was consumed, nor that it was the only house he had in Bath, nor
that he claimed damages of the insurance company.

. But it is impossible to suppose that the secretary of the insurance
company, upon the reception of this letter, could have mistaken its
purport or misunderstood its design.   He had in his own records
and files that which would explain everything in it that could by
any possibility need explanation.   There is nothing to indicate that
the plaintiff had more than one house in Bath.   His house at Small
Point was insured by the defendants.   But, he says, " I hereby
notify you that my house in Bath was consumed by fire," etc.   If
the house was consumed, the north half did not escape.   To con-
sume is " to destroy," " to bring to utter ruin."   Web. Dic.   It is
idle to pretend that the secretary of the insurance company could
have received this notification as a mere piece of general intelli-
gence which called for no action on the part of his company.   The
notice is as definite and as intelligible, certainly, as that which was
more tardily given in the case of *Stimpson* v. *Monmouth M. F. Ins.
Co.* (this same company), 47 Maine, 379, where the court say,
that a letter communicating information of the burning of the plain-
tiff's property " on the night of the 22d ult.," written by an agent
of the company, at the request of the plaintiff (though that fact
was not stated in the letter), was " all the notice necessary to ena-
ble the defendants seasonably to look after their rights, and to ascer-
tain their duties and obligations in the premises."

The letter of the plaintiff here, would furnish all the information
called for by § 7, to any one who was not predetermined to misap-
prehend and cavil,—all that was necessary to put the directors upon
the performance of their part of the contract, to ascertain and settle
the loss.   The ruling of the presiding judge that it was a sufficient
notice, seems to us correct; and this being settled, all questions,
both of law and fact, in connection with the supposed waiver are
seen to be immaterial.

(2) As to the non-payment of the assessment and consequent
forfeiture, the defendants make no complaint of the instructions on
this point.   They were concise and explicit, and made the plain-

tiff's right to recover, to depend upon the simple fact. The testimony of the plaintiff, and of the agent of the insurance company, was contradictory. The jury believed the former, and we cannot say that they erred in so doing.

(3) With regard, also, to the gross negligence of which the plaintiff is alleged to have been guilty, the facts were in dispute, and a careful examination of the testimony fails to demonstrate that the conclusion reached by the jury was erroneous. But the defendants complain of the definition of gross negligence given by the presiding judge. He told the jury that "it is the utter disregard of those precautionary measures which men of ordinary prudence would adopt in such case." It may be that this definition was neither so full nor so accurate as might have been desirable; but we think the plaintiff was more likely to be injured by it than the defendant. The entire omission of those precautionary measures which men of ordinary prudence would adopt in such case, might not constitute gross negligence. Gross negligence is the want of that diligence which even careless men (*dissoluti homines*) are wont to exercise. Hein. Elem. Jur. Lib. 3, Tit. 14, § 787. " For he who is only less diligent than very careful men, cannot be said to be more than slightly inattentive: he who omits ordinary care is a little more negligent than ordinarily men are; and he who omits even slight diligence, fails in the lowest degree of prudence, and is grossly negligent."

It is true, the definition was imperfect; but so far as it went it was calculated to convey the idea that a want of ordinary care would constitute gross negligence, and in that view it required a higher degree of diligence on the part of the plaintiff than he was bound to exercise.

It is possible, also, that there might be positive acts of gross negligence without " an utter disregard of the precautionary measures which men of ordinary prudence would adopt in such case;" and if the testimony relied upon by the defense on this point indicated that the defendants might probably have suffered for want of more explicit instructions in this behalf, we should feel bound to sustain

the exceptions. But it is quite apparent that the case must have turned here upon the finding as to the actual condition and situation of the stove in which the fire was lighted, about which the evidence was conflicting, and not upon any nice definition of what would or would not constitute gross negligence.

> *Defendants' motion and exceptions overruled.*
>
> *Plaintiff's exceptions overruled.*
>
> *Judgment on the verdict.*

WALTON, DICKERSON, DANFORTH, and TAPLEY, JJ., concurred.