RICHARD KINNEY, Appellee, v. FARMERS' MUTUAL FIRE & INS.
SOCIETY OF KIRON, IOWA, Appellant.

Insurance: LIVE STOCK: LOCATION OF PROPERTY: CONSTRUCTION OF POL-
1   ICY. The articles of incorporation of an insurance company restrict-
ing the insurance of live stock to such stock as was upon the land
in possession of the owner or his tenants, includes stock belonging
to the insured but temporarily off his own land for the purpose of
pasturage, in the absence of any provision prohibiting such removal;
the purpose of the article being merely to provide a method of
identifying the stock insured.

Same: VIOLATION OF CONTRACT: BURDEN OF PROOF: INCREASED HAZ-
2   ARD: EVIDENCE. Where a policy of insurance upon live stock made
no provision that in case of removal of the stock from the premises
of the owner the policy should be void, the owner was not charged
with the burden of showing that such removal did not increase the
hazard; as such burden is cast upon the plaintiff only when he has
violated some condition of the policy. And where there was no evi-
dence by which a comparison of the hazard between the place where
the stock was kept on the premises of the owner, and that incident
to the place where it was being kept at the time of the injury, there
was no issue as to increased hazard to submit to the jury.

Same: PROOFS OF LOSS: WAIVER OF STATUTE. An insurance company
3   may waive the provisions of the statute for proofs of loss by provid-
ing a method of notice and proofs in its policy; as where the policy
provided that in case of loss to the property the owner should,
within a certain time, notify the secretary or nearest director, who
should proceed to adjust the loss, etc., the provisions of the statute
on the subject were waived.

Same: EVIDENCE OF LOSS: SUFFICIENCY: DIRECTION OF VERDICT. In
4   this action upon a policy of insurance for loss of live stock the evi-
dence of plaintiff is held sufficient to make a *prima facie* case for
recovery, and in the absence of any evidence from defendant to meet
it the court properly directed a verdict for plaintiff.

*Appeal from Crawford District Court.*—HON. F. M. POWERS,
Judge.

ACTION to recover for the loss of stock. Loss alleged to have occurred on account of windstorm.—*Affirmed*.

*Reed & Robertson,* for appellant.

*Shaw, Sims & Kuehnle,* for appellee.

GAYNOR, J.—On the 23d day of March, 1911, the plaintiff filed his petition in this action, and therein stated, among other things: That on or about the 15th day of May, 1905, the defendant issued to him its certan policy of insurance, by the terms of which it agreed to indemnify the plaintiff in the sum of $400 against loss of cattle by fire, lightning, tornado, windstorm, or cyclone. That on or about the 28th day of January, 1909, twelve head of cattle, belonging to the plaintiff, of the actual value of $600, and covered by said policy of insurance, were destroyed by windstorm. That the cattle so destroyed were not, at the time of their destruction, on the land described in the policy of insurance, and were on certain other land three or four miles distant, and on land leased by the plaintiff for pasturage purposes. That the insured cattle were a part of the herd of cattle actually owned and kept by the plaintiff, at the time of the issuance of the policy, on the land described in the policy, and their absence therefrom, at the time of the loss was temporary only, and for the sole purpose of pasturage, to be returned to the land described in the policy. That within thirty days from the date of such loss, notice thereof and proofs of loss were duly made to the defendant, and payment of loss demanded. That the defendant has failed and refused to pay the loss. Plaintiff further states: That, within three days from the date of the loss, the home office of defendant company was orally notified of such loss, and immediately, within two days thereafter, one of the directors of the defendant company came to the

plaintiff's place and with him investigated the circumstances of the loss and adjusted the same. That no other or further proof of loss nor affidavit respecting the same was ever demanded of the plaintiff. That, by reason thereof, the defendant has waived its right to demand any further proof of loss or notice as a condition precedent to the right of the plaintiff to maintain this action. That, on account of the matters aforesaid, there is due plaintiff, from the defendant the sum of $400, with 6 per cent. interest from April 1, 1909. Attached to the petition was a copy of the application, a copy of the policy of insurance, and also a copy of the constitution and bylaws, the material parts of which, as far as this controversy is concerned, are: Article 5 of the constitution reads as follows: ''This association shall be restricted to the insurance of live stock and other personal property on the farm, in the possession or employ of the owner, or his tenants.''

The defendant demurred to the petition of the plaintiff on the following grounds, among others: (1) That it appears from said petition that the cattle which were injured, and for which damages are claimed, were not on the premises described in the policy and in the application, at the time the injury occurred, but that said cattle were, at the time of the injury, on other premises several miles therefrom. (2) That, from the allegations and statements of the petition, it appears that the cattle, when injured, were not covered by the policy upon which this action is based, for the reason that, under the constitution of defendant which was in existence at the time the policy was issued, the company was restricted, in insuring live stock, to such as was situated on the farm or premises described in the policy, and in possession of the owner thereof, or some one in his employ, or his tenants on said farm, and that the same were removed from said farm, without the consent of the company. This demurrer was submitted to the court and overruled, and, upon the ruling of the court, error is assigned on this appeal.

That, thereafter, the defendant filed its answer to the

plaintiff's petition, in which it admits that an application for insurance was made by the plaintiff, as claimed; that, upon the application made, it issued a policy of insurance to the plaintiff, as stated, and further alleges that the policy sued on, and the application made on which the policy was issued, covered only cattle situated on the S. ½ of the N. W. ¼ of section 11, township 83, range 38, in Crawford county, and that the company, by article 5, hereinbefore set out, was restricted to the insurance of live stock on the farm, in the possession of the owner, or employee of the owner, or tenants. That the property destroyed was not on said premises at the time of the loss, and that the removal of said property from the home and premises was a violation of the terms of the policy, and the warranty contained in the application, and that therefore no liability attaches under the policy.    Defendant further says that the removal of said property from the premises described in the application greatly increased the hazard, and therefore no liability attaches.    Defendant further says that, at the time of the storm, the plaintiff was grossly negligent in caring for the cattle, and that the loss or injury to the same was due to his own gross negligence.    Defendant further contends, and alleges the fact to be, that the act of the plaintiff in removing said cattle from the premises described in the application, to the stockfield and the premises so far distant, and leaving them there, unattended, and failing to look after them and care for them when the storm came, and in permitting them to leave the stockfield and get into the creek and small stream and to remain there until they became chilled and injured thereby, greatly increased the risk, and that the acts of the plaintiff in so doing were the proximate cause of the loss, and that the loss was not due as a proximate result of the storm, as claimed by the plaintiff.    The defendant further denies each and every allegation of plaintiff's petition, not admitted.

Upon the issues thus tendered, the cause was tried to a jury.    At the conclusion of all the testimony, both parties

moved for a directed verdict. The court, upon the submission of the motions, sustained the plaintiff's motion, and overruled the defendant's motion. Thereupon the court directed a verdict for the plaintiff, and judgment was entered thereon, and from this, the cause comes to us on appeal.

The defendant predicates his right to a reversal on five grounds:

I.  That the court erred in not directing a verdict for the defendant, on the ground that the plaintiff's policy did not cover the cattle that were killed or injured, at the time of such injury, for the reason that the undisputed evidence shows that the cattle, at the time they were injured, were not on the premises described in the policy; and in support of this contention directs our attention to the provision of its constitution, hereinbefore set out, claiming that, by the provisions of its constitution it was restricted in its power, and could not issue insurance policies to cover live stock, except upon the farm described in the policy issued.

1. INSURANCE: livestock: location of property: construction of policy.

The undisputed evidence shows that the cattle in controversy were on the premises described in the policy, at the time the defendant issued its policy. The most, therefore, that can be contended for, is that this provision of the constitution limits the right to insure property, other than that, on the premises described in the policy, but we take it that this provision relates only to the time the policy is issued, and is for the purpose only of indentifying the property covered by the policy. There is no provision in the policy that the property insured shall not be removed from the premises during the continuance of the policy, and no provision that the removal from the premises will render the policy inoperative for the purpose for which it was issued. It appears, from the testimony, that the property in question was removed from the lands described in the policy temporarily and for the purpose of pasturage, with the intent on the part of the assured to return them to the home farm.

In the case of *Noyes v. N. N. Ins. Co.*, 64 Wis. 415 (25 N. W. 419, 54 Am. Rep. 631), it was held: Except as to personal property, which has a certain distinct and definite abiding place, a statement in the policy as to its location is not a warranty that it will be continued in its then location during the life of the policy, and, the removal of it to another place and loss occurring, the fact of removal will not defeat the right to recover upon the policy.

In *Holbrook v. St. P. F. & M. Ins. Co.*, 25 Minn. 229, a case in which mules were insured "as being all contained in a certain barn," and the assured removed them to a barn on another section, for the purpose of repairing the barn in which they were kept, it was held that the fact that the loss occurred at a place other than that designated in the policy, and the fact that they had been removed from the premises designated in the policy, would not relieve the company from liability for the loss.

See, also, the case of *London & Lancashire F. Ins. Co. v. Graves*, 12 Ins. Law J. 308. In this case buggies were insured as contained in a certain livery stable. They burned while in a carriage factory for repairs, and it was held that the absence of the buggies, from the designated place of deposit, was an incident to their use, and the insurer was liable.

See, also, in support of this, *Peterson v. Miss. Valley Ins. Co.*, 24 Iowa, 494, in which Judge Dillon, speaking for the court, said: "It cannot be assumed, and is not supposable, that the insurance company intended, or that the assured understood, that he would forfeit all his rights under his policy, and be deprived of the benefit of his insurance, if, peradventure, during the life of his policy, extending over five years, he should remove the property from the premises described in the policy, in the exercise of proper dominion over, and use of the property."

This was a case in which certain live stock was insured. There was no provision in the policy limiting the plaintiff's use of the property to the section upon which it was located,

at the time the policy was issued; that is, no expressed limitation on his right to use it at other places. Judge Dillon, speaking for the court, said: "Is it to be supposed that the plaintiff, every time he took occasion to get off from the section, to the mill, or to market, or for fuel, should go to the insurer and get the consent of the secretary of the company indorsed on his policy? If the assured had so told the plaintiff, at the time of the taking out of the policy, that his insurance would be void if the property, for any purposes, was removed from the premises, we think he hardly would have agreed to take out the insurance."

See, also, *Mills v. Farmers' Insurance Co.*, 37 Iowa, 400, holding the same doctrine. See, also, *McClurer v. G. F. & M. Ins. Co.*, 43 Iowa, 349. See, also, *Everett v. Continental Ins. Co.*, 21 Minn. 76, in which the property insured was a threshing machine stored in a barn on a certain section of land. The machine was burned while standing in an open field, and the company was held liable; the court saying: "Whatever might have been the purpose of the location of the machine in the application and policy, there is no ground whatever for contending that it was, in letter or in spirit, a promissory stipulation on the part of the insured, or a condition of the insurance on the part of the insurer, that this location should remain unchanged, or, if changed, that, while changed, the insurance should cease or be suspended." See, also, *Reck v. Hatborro Insurance Co.*, 163 Pa. 443 (30 Atl. 205).

We hold, therefore, that the removal of the cattle in controversy from the premises, on which they were at the time the policy was issued, under the circumstances of this case, did not forfeit the rights of the plaintiff, under his policy, nor suspend his insurance during the time they were so absent, for it appears that the absence of the cattle from the farm, on which they were located at the time the policy was issued, was only temporary; that their removal was incident to their care and keeping, and the usual and ordinary method pursued by the plaintiff at the time, in caring for and keeping

the cattle; that from the very nature of the property itself it was apparent that it was not contemplated by either party to the contract of insurance that the property should remain permanently on the place designated in the policy. Otherwise, if the property were lost or destroyed by any of the elements insured against, while on their way to market, or off the premises for any legitimate purpose, the policy would be void. It cannot be assumed that such was the intent of the parties, in the absence of any provision in the policy restricting the location to the premises described.

II.    The appellant next contended that the court erred in directing a verdict for the plaintiff, and in not directing a verdict for the defendant, for the reason that, the question,

2. SAME: violation of contract: burden of proof: increased hazard: evidence.
of whether the removal of the cattle increased the risk or hazard was, under section 1743 of the Code, a fact question for the jury. As heretofore stated, the policy made no provision against removal. Section 1743 has relation to cases where there is a provision in the policy prohibiting the act complained of. Where there is no provision in the policy, such as there was in the *Adams case*, 135 Iowa, 299, prohibiting the act complained of, the burden does not rest on the plaintiff to show that there was not an increase of hazard. The burden comes to the plaintiff only when he has violated some term of the policy. When it is shown that he has violated or done some act prohibited by the policy, then the burden rests on him to show that the violation did not increase the hazard. This negative proof, therefore, was not a condition precedent to the right of recovery in this case.

It will be further noticed that there was no evidence before the court, at the time of the ruling on the motion, by which it could institute a comparison between the hazard to the property on the home farm, and the hazard incident to its location at the place where it was kept at the time of the injury. There is evidence of the condition of the fences and the provision for shelter at the place to which they were removed, but there

is no evidence as to the condition of the fences, or the provision for shelter at the home place. It certainly cannot be contended, in the absence of evidence from which a comparison could be made, that they were more exposed to the hazard insured against at one place than the other, except upon proof of some fact that would show to the court that protection against the elements was greater in one place than in the other. We hold, therefore, that there was no question of fact for the jury upon this issue.

III.    Defendant further contended that the court erred in directing a verdict for the plaintiff, for the reason that the issue of waiver was a question of fact for the jury, and not one of law for the court. It will be noticed

3. SAME: proofs of loss: waiver of statute.

that the plaintiff in his petition alleges that, within thirty days of the loss, notice thereof and proofs of the same were duly made to the defendant, and payment of the loss demanded, and in an amendment to his petition alleges that, within three days from the date of the loss of the cattle, the defendant company was orally notified of such loss and immediately, within two days thereafter, one of the directors of the defendant company came to the plaintiff's place with him and investigated the circumstances of the loss.

It will be noticed that the by-laws of the association, which were made a part of the policy, provide: ''Whenever a loss has occurred to live stock, the owner thereof shall, within seven days notify the secretary or the nearest director to the place where the loss occurred, who shall immediately proceed to adjust the loss and report by what means, in his opinion, the loss occurred, and the actual value of the stock, and if the owner and adjuster fail to agree, then the same shall be submitted to the board of directors, from whose decision no appeal can be taken.''

It will be noticed that the plaintiff, when examined, testified upon this question: ''I had Mr. Connors telephone to the treasurer of the defendant company. This was two days

after I knew of the loss. Mr. Lunderville appeared there on the ground later representing the company. He was a director of the company." When asked the question, "What did he say to you as his purpose in coming?" he replied: "He told me there was sufficient loss. He said he came to adjust the loss. He said he had notice to come and adjust the loss."

Lunderville testified: "I was informed of the loss of the Kinney cattle on the 2d of February, and went to see them on the afternoon of the 3d day. I got there about noon, and we went and looked the situation over and came back and had dinner. I told Kinney there that I could not recommend the claim. I would simply report it to the directors and they would have to act on it; that I would leave it to the board of directors to act upon. I told him, in substance, that I would report it to the board. I wrote a report of the Kinney claim on the 3d of February and mailed it to the secretary. The claim was called up at the regular meeting of the company, which would be in September following. Three of us met here, and were appointed by the board to look after the matter. I mean that I simply reported to the board the situation that appeared at the creek. The notice I received of the loss was from James Connors, who called me over the telephone from Manila, and on that call I went over."

It appears, therefore, from the testimony, that the plaintiff gave to the defendant all the notice of the loss that was required of him under the terms of the policy, but that he did not make the proofs required of him by section 1744 of the Code.

The question then is: Did the company, by providing for proofs of loss in this policy (for its by-laws are made a part of the policy), waive the provisions of the statute relating to proofs of loss?

It has been settled by a long line of decisions that any party to a contract may waive any of the provisions of the contract made for his benefit. It has been held by a long line of

decisions that, after loss, a party for whose benefit a provision in the contract is made, including proofs of loss, may waive the same, and upon waiver recovery may be had without any of the proofs required by the statute. If a party can waive the proofs of loss required by the statute after loss, he surely can, by contract, and by a provision in his policy, waive the statutory proofs. It was agreed between the plaintiff and the defendant that, upon notice of the loss, the company would appear and proceed immediately to adjust the loss and report by what means the loss occurred and that the amount of damages, if the adjuster and the assured failed to agree, should be reported to the board of directors, who should then determine the question.

Section 1744 of the Code, providing for proofs of loss, and defining what should be sufficient proofs of loss, grew out of a condition then confronting the Legislature, in which it appeared that some insurance companies had, in their policies, made such restrictions and limitations upon the right of the assured to recover that it became difficult in many cases to administer substantial justice; that the violation of these provisions, so made in the policy, often defeated policy holders in securing just claims. To meet this condition, the Legislature provided the character and kind of proofs that should be made by the other upon the happening of a loss, and no greater proof than was required by the statute could be exacted by the company, notwithstanding any provisions of its policy to the contrary. This provision does not, however, mean that the insurance company cannot contract for less than that required by the statute. It means that it cannot contract for more; and where, by its contract, it provides for certain proofs of loss, a compliance with the requirements of the policy waives the necessity of any other or greater proof.

In the case of *Campbell v. Monmouth Mutual Fire Ins. Co.*, 59 Me. 434, the court said: "The plaintiff must show either such notice as has been stipulated by the insurance company, in their contract of insurance, or such as the statute of

our state declares shall be sufficient notice, whatever the stip-
ulation in that respect may be. If he gives the notice which is
called for by the contract, he is under no obligation to go
further and show that he has given the notice required by
the statute.  The statute fixing the kind and character of
notice was not designed for the purpose of laying any addi-
tional burdens upon the assured, or affording any stumbling-
blocks in the way of the policy holder, before his case could
be heard upon its merits, and it should not be construed so as
to give it that effect.  The requirements of the statute do not
apply to cases where, by the terms of the policy, the insurance
company undertakes, upon the reception of a mere notice
of the loss, to ascertain the amount by view, or in such other
mode as they think proper, and, after receiving such notice,
makes no attempt to perform its part of the contract.  Resort-
ing to the by-laws of the company for information, we find
the following provision: 'When any member shall sustain
any loss of the property insured, the member shall, within
sixty days after such loss, give notice thereof in writing, to
the board of directors, or some of them, or to the secretary of
the company, and the board of directors, upon a view of the
same, or any such other way as they deem proper, shall ascer-
tain and determine the amount of the loss.' "  This provision
of the by-laws was made a part of the policy.

The holding in this case is recognized in *Dolbier v. Agri-
cultural Insurance Co.,* 67 Me. 180, and *Brock v. Des Moines
Insurance Co.,* 96 Iowa, 39.  We find, therefore, no disputed
question of fact for the jury upon this issue.

IV.  It is next claimed by the defendant that the court
erred in directing a verdict for the plaintiff because the undis-
puted evidence in the case shows that the proximate cause of
the loss of the cattle was not the windstorm
in question, or that the evidence fails to show,
affirmatively, that the windstorm was the
proximate cause of the injury to the cattle.

4. SAME: evi-
dence of loss:
sufficiency:
direction of
verdict.

Upon this issue, we think that, under the evidence, unbiased

minds, honestly searching for the truth, would not differ—could not differ—as to the proximate cause of the injury to these cattle. It is true that the evidence discloses that they passed from the inclosure in which they were kept, and some of them were found in a creek some distance from the farm. It also appears that some cattle in the herd were found between the stream of water and the place in which they were kept, entangled in the wire fence; that on the night of the 28th and 29th of January there broke over this country a most severe windstorm, probably as severe as ever happened in that country; that the stock proceeded from the place in which they were kept, direct with the wind, as then blowing; that the storm commenced on the 28th and continued through the 29th; that it blew down standing trees, and buildings, windmills, sheds, and other property; that it was intensely cold; that the storm came suddenly; that the snow fell in great quantities.

Defendant's witnesses testified:

"I have seen other storms as severe as this, but I would not say that I ever saw one more severe."

Lunderville, a witness for the defendant testified: "The storm was uniform. It did not come in gushes. It was a high wind. It was not a tornado, but a strong wind. It was cold. It started on the evening of the 28th somewhere about 9 o'clock with rain. It continued raining for a while, and then it changed to sleet. The next morning the wind got high, and it started to snow, and blizzard like; an awful snow. It continued until the evening of the 29th."

Under these circumstances, we think the burden shifted upon the defendant to show that the loss or damage was due to the snow, or hail, or sleet, or rain, or some other cause. This it did not attempt. The showing on the part of the plaintiff made a *prima facie* case, and, under the record, the court was justified in saying that the storm was the efficient and proximate cause of the damage.

This storm was described and treated in the case of *Jordan v. Insurance Co.*, 151 Iowa, 74. This case was tried to the

court without a jury, and in this case it was contended (as in this) that the storm was not the proximate cause of the loss or damage, and that the injury to the cattle was due directly, if not solely, to other conditions. The court said: "This was a question of fact to be determined from the testimony, and, without setting it out, it is sufficient to say that the trial court was justified in finding that the loss would not have happened but for the windstorm, and that the windstorm was the efficient cause of the damage, although other responsible causes may have contributed to the loss."

The policy in the *Jordan* case (as in this) does not confine the loss resulting directly from the windstorm, such as physical injury to the stock, or by throwing them to the ground, or by driving them against some obstacle, or the hurling of some obstacle against them. This would be too narrow a construction, and, even if it were susceptible to such construction, a construction should be adopted which is most favorable to the assured.

On the whole record, we find no error in the action of the court, and the cause is therefore *Affirmed.*