CURRAN HYDRAULIC CORPORATION,
Appellee,

v.

NATIONAL–BEN FRANKLIN
INSURANCE COMPANY OF
ILLINOIS, Appellant.

No. 59190.

Supreme Court of Iowa.

Jan. 18, 1978.

Fuerste, Carew, Coyle, Juergens & Sudmeier, Dubuque, for appellant.

Reynolds, Kenline, Breitbach, McCarthy, Clemens & McKay, Dubuque, for appellee.

Heard by MOORE, C. J., and LeGRAND, REES, UHLENHOPP and McCORMICK, JJ.

McCORMICK, Justice.

This appeal arises from an insurance coverage dispute. The litigated question is whether property of plaintiff Curran Hydraulic Corporation was insured by defendant National-Ben Franklin Insurance Company of Illinois on April 16, 1974, when it was destroyed by fire. The controversy was tried to a jury which found for plaintiff and fixed its recovery at $350,000. Defendant contends that it was entitled to a directed verdict and that the trial court erred in an instruction. We find there was sufficient evidence to submit the case to the jury and the giving of the challenged instruction was not reversible error. We affirm.

In considering a motion for directed verdict the court views the evidence in the light most favorable to the party against whom the motion was made. *Osterfoss v. Illinois Central Railroad,* 215 N.W.2d 233, 238 (Iowa 1974). And in determining, as we must here, whether the evidence supports giving an instruction on a particular issue, the evidence is given the most favorable construction it will reasonably bear in favor of the party urging submission. *Miller v. International Harvester Co.,* 246 N.W.2d 298, 301 (Iowa 1976). Therefore, resolution of both issues in this case requires examination of the evidence in its light most favorable to plaintiff. It will be summarized in that light here.

Plaintiff is an Illinois corporation engaged in the manufacture, assembly and sale of hydraulic fittings and systems. From its inception in 1970 until October 1973, the business was located in McHenry, Illinois. It began moving to Dyersville, Iowa, in October 1973, and by March 1974 its assembly and sales operations were in Iowa and only the manufacturing operation remained in Illinois. The business was housed in Dyersville in a portion of a building known as the Coyle Wall building rented on a month to month basis from its owner Joe Ertl. The building had a local address of 301 Fifth Street N.W., although the address was not displayed on the structure, nor were street addresses shown on other business buildings in Dyersville, a community of approximately 4,000 people. A new steel building for the business was

under construction. It was being built by the Peridot Corporation, of which William Curran, president of plaintiff, and his secretary were the stockholders. The plan was for plaintiff to lease the building and move the entire business into it when it was completed. Curran obtained the address 528 Fifth Street N.W. for the new building from the city and used it on plaintiff's stationery from the time of the initial move to Dyersville. Business mail in Dyersville was not locally delivered.

Roger Duba was a financial consultant who had helped plaintiff obtain bank financing. In monitoring a bank loan Duba became concerned about whether plaintiff was meeting its obligation to keep its equipment and inventory in Iowa insured at fair market value. He and Curran soon realized the property in Iowa was under-insured, although it had been adequately insured in Illinois with American States Insurance Company. Duba arranged to accompany O. J. Wheeler, an independent agent in Illinois, to a meeting with Curran in Iowa on March 2, 1974.

Wheeler desired plaintiff's business and held himself out at the meeting as capable of providing any necessary insurance services. Duba, Wheeler, Curran, and William Rose, an associate of Curran, attended the March 2 meeting in Curran's office in the Coyle Wall building. Wheeler inspected the equipment and inventory in use there and studied the American States policy which covered plaintiff in Illinois and provided off-premises protection of only $10,000. The American States policy year commenced each April 10. At Curran's request, Wheeler agreed to obtain $50,000 insurance on his equipment in Dyersville, $250,000 on inventory there, and $25,000 monthly business interruption insurance. He also agreed to obtain $60,000 liability coverage to protect plaintiff against any claim by Ertl for loss of the building. Products liability and workers compensation coverage was also discussed.

Curran emphasized to Wheeler that he wanted to obtain insurance on the property and operations in the Coyle Wall building.

Although Curran said he wished to move as soon as the new building was complete, he did not estimate for Wheeler when that might be. Without having specifically requested Wheeler to do so, he expected Wheeler to transfer the coverage to the new building when the property and operations were moved there.

While Wheeler was in Dyersville, because Duba wanted to see the new building in connection with financing concerns, the group visited it. Construction was about 60 percent complete at that time.

Even though he was an authorized agent for American States in Illinois, Wheeler learned upon inquiry after his return home that American States would not authorize him to write plaintiff's coverage in Iowa. On March 6, 1974, Wheeler notified plaintiff of that fact and suggested Curran seek insurance locally. Duba asked Wheeler in plaintiff's behalf to keep trying to obtain coverage, and Wheeler agreed to do so.

In late March Wheeler contacted defendant, a subsidiary of the Continental Corporation, for which he was also an Illinois agent. On March 26, 1974, after obtaining certain financial data from Duba, he submitted an application to defendant. He assumed, without checking with Duba or Curran, that plaintiff had already moved into the new building and identified that building on the application as the location of the property to be insured. On about March 28, 1974, he and Duba lunched in Chicago with Thomas R. Thomas, sales superintendent of defendant, discussed plaintiff's business, and successfully convinced Thomas of the desirability of insuring plaintiff.

Wheeler subsequently pressed defendant's underwriters to obtain approval of the application. They testified he told them plaintiff was moving into its new building April 6, 1974, although he denied doing so, insisting he thought plaintiff had moved in March. He cleared proposed coverage amounts with Duba who in turn informed Curran about them. The location of the property to be insured was not discussed and Wheeler did not reveal he had applied

for coverage only in the new building. Defendant's underwriting department recognized a Continental subsidiary other than defendant would need to issue the policy because defendant was not authorized to do business in Iowa, but approval of the risk was obtained. Wheeler was authorized to bind the coverage on April 4, effective April 10, 1974.

Wheeler sent plaintiff the following binder letter:

April 4, 1974

Curran Hydraulics, Inc.
528 Fifth Street N.W.
Dyersville, Iowa 52043

Re: Insurance Binder

Gentlemen:

Pending the issuance of policies to be effective at 12:01 a. m. April 10, 1974, this letter is your evidence of insurance coverage in the National-Ben Franklin Insurance Company at limits:

1) $60,000 Fire & Extended Coverage on the Building
2) $250,000 ″ ″ ″ on the contents consisting of machinery, stock, furniture, and fixtures
3) $25,000 per month for six months on use & occupancy (Loss of earnings)
4) $2,000 Burglary & Robbery
5) $500,000 Public Liability including Product Liability
6) Workmen's Compensation & Employers Liability

It is a pleasure to be of service in connection with this business and I trust you will be able to use the facilities of this agency still further.

Very truly yours,

O. J. Wheeler

Plaintiff had not moved into the new building and in fact did not move its business there until June 1974. The Coyle Wall building and its contents, including plaintiff's Iowa equipment and inventory, were destroyed by fire in the early morning of April 16, 1974. Duba informed Wheeler of the loss. Wheeler notified Continental which caused it to be investigated. Coverage was later denied on the ground the property and operations in the Coyle Wall building were not insured because the binder covered only plaintiff's property and operations in the new building. This lawsuit resulted.

I. *Defendant's motions for directed verdict.* In moving for directed verdict at the conclusion of plaintiff's evidence and at the close of all evidence, and in moving for judgment notwithstanding the verdict, defendant asserted the evidence was insufficient for the jury to find that the binder letter created a contract insuring plaintiff in the Coyle Wall building. In addition, defendant attacked the sufficiency of evidence to support a finding that Wheeler had authority to bind defendant to insure plaintiff anywhere but in the new building. The trial court overruled these motions and its rulings are assigned as error.

Defendant admits that the binder letter established a contract to insure and that Wheeler was its agent in making the contract. However, it alleges that the contract insured plaintiff only in the new building and that Wheeler lacked authority to make any other contract.

■ A. *Sufficiency of evidence of the contract.* The contention that the binder letter gave coverage only in the new building cannot be based on the language of the binder. It does not describe the location of the property to be insured. Addressing the binder to plaintiff at its new address did not make the new address the location to be insured, particularly since plaintiff used that mailing address even before construction of the new building. Similarly, the reference in the binder to "$60,000 Fire & Extended Coverage on the Building" could be taken by plaintiff to refer to the coverage he desired in order to protect his liability to the owner of the Coyle Wall building.

The record contains substantial evidence that plaintiff requested insurance on its property and operations in the Coyle Wall building and that Wheeler had agreed to obtain it. For purposes of this analysis, we assume Wheeler's knowledge is imputable to defendant. As a result, when plaintiff received the binder letter which purported to respond to its request for insurance and

did not disclose an intention to insure the property at a different location, the jury could find plaintiff was justified in believing the binder covered the property in accordance with its intention.

The governing principle is expressed in § 622.22, The Code, as follows:

> When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it.

We have approved the same principle as a matter of common law, citing Restatement of the Law, Second, Contracts § 227. See *Tamm, Inc. v. Pildis,* 249 N.W.2d 823, 832 (Iowa 1976); *Holm v. Hansen,* 248 N.W.2d 503, 509 (Iowa 1976).

This principle was explained and applied to an analogous problem in *Iowa-Des Moines National Bank v. Insurance Company of North America,* 459 F.2d 650 (8 Cir. 1972), where the court concluded:

> The insurer cannot be entitled to a verdict on the ground that there existed no meeting of the minds simply because it is able to produce evidence showing that at the time the contract was executed the insurer disagreed with the insured over the contract's interpretation. [citations]. Such an outcome would wholly defeat the law's well-founded position that where two reasonable interpretations exist, the one that will sustain the claim and cover the loss will be adopted over the interpretation which will defeat recovery. *Id.* at 656.

See Restatement of the Law, Second, Contracts § 21A(2).

We conclude sufficient evidence existed to support jury submission of the issue whether the binder covered plaintiff's property and operations in the Coyle Wall building.

B. *Defendant's knowledge and Wheeler's authority.* The second ground on which defendant challenges the trial court's rulings on its motions is lack of evidence of Wheeler's authority to bind coverage other than in the new building. The issue of Wheeler's authority was submitted to the jury under appropriate instructions here. The fulcrum of defendant's attack is its disavowal of Wheeler's knowledge of events prior to its granting of binder authority to him. Prior to that time Wheeler was a soliciting agent for defendant in Illinois but not in Iowa. Defendant argues that it lacked actual knowledge of plaintiff's request for coverage in the Coyle Wall building and that Wheeler's knowledge acquired before he was authorized to bind coverage in Iowa cannot be imputed to it. We do not agree.

We pass the question of the effect of Wheeler's Illinois agency. The rule in Iowa is that knowledge acquired by an agent before the commencement of the relationship of principal and agent is imputable to the principal if the knowledge is present in the mind of the agent while acting for the principal in a transaction to which the information is material. *Farnsworth v. Hazelett,* 197 Iowa 1367, 1372, 199 N.W. 410, 412 (1924). This is the rule recognized in the majority of jurisdictions. See 16A Appleman, Insurance Law and Practice, § 9101 at 356 (Revised Ed. 1968); 3 Am.Jur.2d Agency § 279; 3 C.J.S. Agency § 445 at 316; Restatement of the Law, Second, Agency § 276 ("Except for knowledge acquired confidentially, the time, place, or manner in which knowledge is acquired by a servant or other agent is immaterial in determining the liability of his principal because of it."). Under this rule defendant was chargeable with Wheeler's knowledge prior to its grant of binder authority. Thus the jury could find defendant knew what Wheeler was found to know.

Having this imputed knowledge, defendant's conduct in the late March Chicago meeting of its sales superintendent Thomas with Duba and Wheeler is sufficient in itself to justify jury submission of the issue of Wheeler's authority to bind coverage of plaintiff in the Coyle Wall premises. Principles governing apparent authority are explained in *State v. Sellers,* 258 N.W.2d 292, 297 (Iowa 1977), and are fully applicable here. When apparent au-

thority exists, manifestations of the principal to the other party to the transaction are interpreted in the light of what the other party knows or should know instead of what the agent knows or should know. Restatement of the Law, Second, Agency, § 49. Substantial evidence exists in the present record from which the jury could find that Wheeler was cloaked by defendant with apparent authority to bind coverage in the Coyle Wall building and that plaintiff's intention in the transaction was to obtain insurance on its property and operations in that location.

We find no merit in defendant's allegation that the trial court erred in overruling the motions for directed verdict and for judgment notwithstanding the verdict on the grounds alleged.

II. *The instruction.* At plaintiff's request and over defendant's timely exception the trial court included the following among its instructions:

### INSTRUCTION NO. 10

Plaintiff contends the binder letter of April 4, 1974, operates so as to bind the coverages set out therein upon the contents of the Ertl Building it then occupied at 301 N.W. 5th Street, Dyersville, Iowa, and the use and occupancy (loss of earnings) of that building.

Defendant contends such binder was effective only upon the premises (owned by the Peridot Corporation) at 528 N.W. 5th Street, Dyersville, Iowa.

In this connection, the description of the premises upon which the covered property is located is an important consideration. However, the description of the premises may not be completely controlling and determinative if the binder was issued under such circumstances that the location of the property at more than one location was reasonably within the contemplation of the parties and would not materially affect the risk to be covered.

Among other grounds, defendant challenged the last paragraph of the instruction as lacking support in the evidence. We believe this ground is meritorious, but we hold reversible error did not result.

The location of property to be insured is so closely associated with the risk involved that location is usually a material element of an insurance contract. *Morgan Smith Automotive Products, Inc. v. Continental Ins. Co.,* 418 Pa. 190, 210 A.2d 273 (1965); *Epstein v. Northwestern National Ins. Co.,* 267 Mass. 571, 166 N.E. 749 (1929); 1 Couch, Cyclopedia of Insurance Law, § 5:10 (Second ed. 1959); 4 Appleman, Insurance Law and Practice, § 2350 at 360 (1969). The description of the location is treated as a warranty that the property is there and coverage ordinarily will not be extended to other locations. *Antun v. New York Central Mutual Fire Ins. Co.,* 45 A.D.2d 999, 357 N.Y.S.2d 865 (1974); *Peony Park v. Security Ins. Co. of New Haven,* Conn., 137 Neb. 504, 289 N.W. 848 (1940). Exceptions to this rule have been recognized. The rule does not apply when the parties agree location is not material. This agreement may be express or implied. Sometimes it is established by circumstantial evidence. See *Winsor v. Tornado Ass'n,* 170 Iowa 521, 150 N.W. 97 (1915); *Kinney v. Insurance Society,* 159 Iowa 490, 141 N.W. 706 (1913); *Cottrell v. Insurance Co.,* 145 Iowa 651, 124 N.W. 612 (1910).

This exception is the one upon which instruction 10 was based. Evidence was received indicating no significant difference in the risk existed between the location plaintiff insisted was insured and the location defendant purported actually to insure. However, no evidence was adduced that either party intended the description of location not to be material. Under the version of evidence most favorable to plaintiff, the jury could find at most that plaintiff expected Wheeler to obtain coverage which would insure the property and operations in the Coyle Wall building so long as the business was there and transfer coverage to the new building when the business moved. The description of location was material but would change as the circumstances changed. On this basis, we agree with defendant that the third paragraph of instruction 10 lacked support in the evi-

dence. However, we do not agree the giving of the instruction was reversible error.

In giving instruction 10, the trial court awarded defendant more than it was entitled to under the evidence. The instruction was premised on the theory the binder letter contained a description of the location of the property and operations to be insured. The letter was the only relevant document which could have contained a description of premises as an element of the contract. Defendant contended the jury could find the letter's address constituted such a description. We believe the trial court should have held as a matter of law that the binder letter did not contain a description of the location of the insured property and operations. Viewing the evidence for this purpose in its light most favorable to defendant, we find no evidence from which a reasonable inference could be drawn that the address purported to be a designation of location of coverage.

 The supervisory underwriter of defendant testified that the company's printed binder forms expressly designated location of insured property and that a binder letter from defendant would have designated location in the body of the letter. Wheeler, who wrote the letter, was unable to explain how he obtained the address he used. Even though he testified he knew it was the address of the new building and he intended to bind coverage there only, he said he selected the address because he desired to send the letter to what he believed was plaintiff's current address. Moreover, even assuming defendant intended the address as a designation of location of coverage, there is no evidence plaintiff, which had used the address since its arrival in Dyersville, could be charged with knowing it was used to describe the situs of coverage. The mailing address is circumstantial evidence to be considered with other evidence in the case on the issue of what location was intended to be insured, but it does not constitute a designation in the binder letter of the premises on which the covered property was located. See *Indemnity Marine Assur. Co. v. Citizens National Bank,* 463 S.W.2d 290, 291 (Tex.Civ.App. 1971) ("The insured's mailing address, shown in the first part of the policy, does not supply the omitted information as to the location of the property, and should not be so construed.").

The presumption of prejudice which arises from the trial court's giving of an instruction not supported by the evidence is overcome when the issue on which the instruction is premised should have been resolved as a matter of law against the complaining party. *Baker v. Wolfe,* 164 N.W.2d 835, 839–840 (Iowa 1969); *Strahorn v. Kansas City Fire and Marine Ins. Co.,* 241 Iowa 991, 999, 42 N.W.2d 903, 906–907 (1950). The instruction imposed a burden on plaintiff which it did not have under the record in this case and which it was wrong in assuming. No prejudice occurred to defendant here.

We find no reversible error.

AFFIRMED.