ABRAHAM J. EPSTEIN *vs.* NORTHWESTERN NATIONAL INSURANCE COMPANY.

Suffolk.   February 27, 1929. — June 5, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Insurance,* Fire: construction of policy, notice of loss, waiver of condition.   *Evidence,* Relevancy and materiality.   *Waiver.*

At the trial of an action upon a policy of fire insurance, there was evidence that the goods lost were in the basement of a large building numbered 50 Essex Street in Boston; that the plaintiff occupied premises both on the first floor and in the basement, the stockroom being in the basement; that the policy was in the Massachusetts standard form and was one of several issued to the plaintiff in renewal of previous policies; that the description clause read as follows, the italicized words being in handwriting: "On Stock in Trade and Merchandise, consisting principally of *woolens* . . . all while contained in and on a *brick, concrete and steel* building . . . situated *No. 50 Essex Street, Boston, Mass., 1st floor*"; that the original policies, and part of the renewal policies did not include the words "first floor"; that the rates of premiums were the same, whether the policy covered the stock in trade on the first floor or on the first floor and basement; that the policies remained in the possession of the plaintiff's insurance broker without examination and without reading for over six months and until after the fire which caused the loss.   The judge ordered a verdict for the defendant and the action was reported for determination by this court.   *Held,* that

(1) Evidence that the rates were the same whether the policy covered the stock in trade on the first floor or on the first floor and basement was material and relevant upon the possible issue, whether the location of the stock in trade was an essential element in the description of the property intended to be insured;

(2) The retention of the renewal policy for over six months by the plaintiff's broker without examination and without reading precluded the plaintiff from contending that the words "first floor" therein should be rejected because they were improperly added or that they could be disregarded in the construction to be given to the descriptive terms of the insurance contract;

(3) Construing the descriptive terms and conditions of the policy most strongly against the defendant, the words, "situated *No. 50 Essex Street, Boston, Mass., 1st floor*," presented a question for the jury, who, on the evidence, would have been warranted in finding that those words indicated the entrance to the premises and not the locus of the property to be covered by insurance.

At the trial of the action above described, it appeared that the fire occurred on July 3 and that no proof of loss was formally presented to the defendant until October 22; but, on evidence of negotiations of the parties in the interval, that the plaintiff furnished an extended inventory within ten days after the fire, that the defendant's representative did not raise any question as to the plaintiff's not having furnished formal proof but, asked by the plaintiff if anything else were wanted of him, declared, "that was about all," that on October 21 the defendant denied liability only on the ground that the policy did not cover goods in the basement of the building, and that the next day the plaintiff sent a formal sworn statement of loss; and in the absence of evidence that no agent of the defendant had power to waive any term of the policy and particularly in the absence of evidence of a want of authority in the general agent to compromise or waive any disputed question of law or fact which might arise during the adjustment of a claim made against the defendant by one seeking to enforce alleged rights under a policy issued by the defendant, it was *held*, that a finding was warranted that the delay of the plaintiff in furnishing the sworn statement was induced by the action and declaration of the defendant's general agent, and that such conduct amounted to a waiver of the requirement of the policy that a sworn written statement be furnished forthwith.

CONTRACT upon a policy of fire insurance, described in the opinion. Writ dated January 15, 1926.

In the Superior Court, the action was tried before *Flynn*, J. Material evidence is stated in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant. After the death of the trial judge, the action was reported to this court by *Cox*, J., upon a stipulation by the parties that, if the case should have been submitted to the jury upon the competent and material evidence as set forth in the statement of evidence (no question of pleading or form being raised), judgment should be entered for the plaintiff in the sum of $1,176.23, plus interest; and, if the judge properly ordered the verdict for the defendant, it should stand.

The case was submitted on briefs.

*M. L. Orlov & P. Cowin*, for the plaintiff.

*W. Hartstone*, for the defendant.

PIERCE, J. This is an action of contract to recover upon a fire insurance policy. The case comes before us on a report after a directed verdict for the defendant.

The facts, which the jury warrantably could have found

supported the case of the plaintiff, are in substance as follows: The plaintiff, a woolen merchant, had occupied the premises wherein the fire occurred for three years prior to the date of the fire. The premises consisted of a stockroom and office. "The stockroom was in the basement and the office upstairs on the street floor." Access to the basement was by an uncovered stairway in the left corner of the store, guarded by a railing in full view from the store. The plaintiff's stock was kept in the stockroom; "the store was used for office purposes and just showing samples." These premises with an entrance through a doorway on the street floor numbered 50 Essex Street, Boston, were located in a large building that occupied the triangular lot at the corner of Chauncy Street and Essex Street and Harrison Avenue; the building had various entrances. A fire occurred on Friday, July 3, 1925, in the basement of the plaintiff's premises and the damage was confined to the merchandise therein.

At the time of the fire the plaintiff had eighteen policies covering the property contained in the building. The policy sued on, numbered 30517, was a Massachusetts standard form policy which was placed with R. S. Hoffman & Co., general agent of the defendant, by an insurance broker, one Isenberg. The descriptive clause relating to the property insured and to its location was set forth in a "rider" attached to the policy, the pertinent language of which reads*: "*$3500* On Stock in Trade and Merchandise, consisting principally of *woolens* . . . all while contained in and on *brick, concrete and steel* building occupied at the time this policy is written wholly or principally for office and/or mercantile and/or manufacturing purposes with or without dwellings. situated *No. 50 Essex Street, Boston, Mass., 1st floor.*" Of the eighteen policies covering the property of the plaintiff, ten in 1922 were placed by his insurance broker, one Isenberg. Five of the ten policies contained the words "first floor" in the description of the entrance to the building, and five of them did not. The rate per thousand on all ten policies was the same. The rates of insurance

---

* Italicized words were in handwriting in the policy.

were the same whether the insurance covered merely the first floor or first floor and basement.

We do not agree with the contention of the defendant that it was immaterial that the rates were the same whether the policy covered the stock in trade on the first floor or on the first floor and basement. This was a material fact, and was relevant upon the possible issue whether the location of the stock in trade was an essential element in the description of the property intended to be insured.

The policy sued on was a renewal of previous insurance policies placed with the defendant through its general agent, R. S. Hoffman & Co. On cross-examination the insurance broker, Isenberg, testified that the insurance policies came back to him from Hoffman's office; that he did not read them at that time; that all Hoffman's policies in 1925 read alike, that is, all included the words "first floor"; that all the other policies did not include the words "first floor"; that he did not know that Hoffman's policies did not read the same as the others prior to the loss; that he assumed that all the policies read alike; that he did know that the prior policies were all alike for previous years; that they did not contain the words "first floor"; and that when the policies were placed he went over them carefully, but "as to renewals, he just let them go by."

The location of property insured is usually an essential element in the description, and the policy will not be extended to cover property not within the terms of the description. *Heath* v. *Franklin Ins. Co.* 1 Cush. 257, 261, 262. A renewal of insurance is in essence a new contract wherein the rights of the parties are to be determined by a consideration of the terms and conditions of the original policy, *Brady* v. *North Western Ins. Co.* 11 Mich. 425, *Hartford Fire Ins. Co.* v. *Walsh*, 54 Ill. 164, 167, *Jenkins* v. *Covenant Mutual Life Ins. Co.* 171 Mo. 375, *Guptill* v. *Pine Tree State Mutual Fire Ins. Co.* 109 Maine, 323, unless a new policy be delivered to the insured or to his authorized agent in connection with the contract of renewal, in which case the insured is presumed to have assented to the terms of the new policy if it is retained without reading or read without complaint and rejection until

after the destruction by fire of the insured property. *Thomson* v. *Southern Mutual Ins. Co.* 90 Ga. 78. In the instant case the new policy sued on was retained by the agent, who placed the insurance for the plaintiff, without examination and without reading from December 12, 1924, until after the fire on July 3, 1925. In such circumstances there is no room for an argument that the words "first floor" in the renewal policy should be rejected because they were improperly added or that they can be disregarded in the construction to be given to the descriptive terms of the insurance contract. *Sampson* v. *Security Ins. Co.* 133 Mass. 49, 55.

Assuming the words "first floor" are of the terms of the contract, the question for decision, in the light of the fact that there were various entrances to the building and a single one to the plaintiff's premises, is, Are the words "situated *No. 50 Essex Street, Boston, Mass., 1st floor*" to be interpreted to designate the entrance to the premises of the plaintiff or to indicate the locus of the goods? It is plain the defendant did not knowingly add the words "first floor" to the terms and conditions of the original policy when it executed the renewal policy, with a purpose to have the stock in trade in the basement uninsured; and it is obvious that the insured believed when the premiums were paid the defendant that the renewal policy covered, as the original policies did, the goods in the basement. Construing the descriptive terms and conditions of the policy most strongly against the defendant, we think the words "situated *No. 50 Essex Street, Boston, Mass., 1st floor*" presented a question of fact for the jury, and that they warrantably could be held to indicate the entrance to the premises and not the locus of the property to be covered by insurance. Williston on Contracts, 1193, 1194.

The final question is, Has the plaintiff complied with the requirements of the policy or statute with respect to time of notice and statement of proof of loss? or, if not, Were the requirements, so far as not performed, waived? G. L. c. 175, § 102, so far as pertinent to the present inquiry, reads: "In case of loss under any fire insurance policy in the standard form prescribed by section ninety-nine, the company shall

not, in defence of any action, avail itself of the omission on the part of the insured to furnish forthwith to the company the sworn written statement required by said standard form, provided the insured has, after such loss, forthwith in writing notified the company, at its home office or at the office of the agency issuing the policy, of the fire, and the location thereof, and provided further that the insured, if the company, after receiving notice in writing as aforesaid, requests him in writing so to do, furnishes the company with said sworn statement."

The material facts which warrantably could have been found by the jury are as follows: The fire occurred on July 3, 1925. The plaintiff, who was away, was notified of it on July 6, 1925. His insurance brokers, Isenberg and Granberg, immediately notified the defendant's general agent and the various representatives of the other insurance companies. On the same day R. S. Hoffman, the treasurer, director and general manager of the general agents of the defendant, called on the plaintiff, as did the representatives of the other insurance companies. It took the plaintiff ten days or two weeks to prepare a complete inventory of his loss. He worked with two experts and made notes which he had typewritten. Shortly after the typewritten notes were ready, Hoffman and the agents of the other insurance companies again called on the plaintiff. The group, three or four men including Hoffman, took the inventory to one side, examined it and conferred amongst themselves. When they had finished their consultation "the plaintiff asked them if there was anything else for him to do, if they wanted anything else, and they said that was about all," that they would send an accountant to check the plaintiff's books and the schedules for comparison. The plaintiff also asked Hoffman personally "if there was anything else they wanted from me," and Hoffman said "that was about all." Subsequently, a man employed by the Hoffman company came with the paper to the plaintiff's place of business and checked up the inventory, spending "a week or ten days in doing so." The document was in evidence, but because of its bulk, it was agreed that it might be described in the record as "something more than an inventory

of the plaintiff's loss. It consisted of an inventory, that is, a complete itemized list of each piece of the plaintiff's property and the damage to each, with the figures as to sound value and damage extended and totalled, and in addition, on its first page, included a list of all insurance policies by name, number and amount, covering the goods on the premises, the name of the insurance brokers who placed the insurance, the plaintiff's address and the date of the fire."

From the time the employee of the Hoffman company finished his comparison of the plaintiff's books and the inventory schedule the parties negotiated as to the amount of the loss until August 30, 1925. Hoffman and the other adjusters met with the plaintiff numerous times, and on the last named date agreed upon the amount of the loss and the whole value; and from August 30, 1925, until October 23, they talked about the settlement of all liability under the policy or of settling the claim. On October 21, 1925, the plaintiff was notified that the defendant denied liability by reason of the alleged fact that the policy did not cover merchandise in the basement. On October 22, 1925, the plaintiff sent the defendant, with a letter of even date, a proof of loss which "It is agreed . . . was in proper form, aside from any question raised by the defendant that the proof may not have been proper by reason of improper adjustment values of merchandise upstairs and downstairs." It is to be noted that there was no merchandise "upstairs."

It is the contention of the defendant upon this branch of the case that "the sworn statement furnished October 23 [22?], 1925, was not a compliance with the condition of the policy to furnish a statement 'forthwith.'" On the above facts, including the declaration of Hoffman, the jury warrantably could find that the delay of the plaintiff in furnishing the sworn statement until the day he was notified of the position of the defendant, was induced by the action and declaration of the defendant's general agent, and that such conduct amounted to a waiver of the requirement of the policy that a sworn written statement be furnished forthwith. The facts may be found to exist equivalent to a representation by the insurer to the effect that the right to require the

written statement, while not abandoned, would be treated as suspended until the termination of effort to settle the claim. *Greenough* v. *Phoenix Ins. Co. of Hartford,* 206 Mass. 247. There is no evidence reported to the effect that no agent of the defendant shall have power to waive any term of the policy; and particularly there is no evidence of a want of authority in the general agent to compromise or waive any disputed question of law or fact which may arise during the adjustment of a claim made against the defendant by one seeking to enforce alleged rights under a policy issued by the defendant. The evidence offered and received was competent and material upon the issues raised at the trial.

It follows, in accordance with the terms of the stipulation of the parties, that "judgment is to be entered for the plaintiff in the sum of $1,176.23, plus interest."

*So ordered.*