**COMMERCIAL INSURANCE COMPANY, Plaintiff,**

v.

**AMERICAN AND FOREIGN INSURANCE ASSOCIATION et al., Defendants.**

Civ. No. 343–70.

United States District Court, D. Puerto Rico.

Jan. 2, 1974.

Charles M. Cordero, San Juan, Puerto Rico, for plaintiff.

David Rivé-Rivera, for Rieckehoff, Calderón, Rosa Silva & Vargas, Hato Rey, San Juan, Puerto Rico, for defendants.

## MEMORANDUM AND ORDER

CANCIO, Chief Judge.

The following motions are presently before this Court in this case:

1. Plaintiff's motion under Rule 60(b), filed on February 7, 1973, requesting that our Order of December 20,

1972 be vacated and our Order of September 28, 1972 be reinstated. Defendants have filed opposition to this motion.

2. Defendants' motion for protective order filed on March 15, 1973. Plaintiff has filed opposition to this motion.

3. Defendants' motion for continuance of deposition of March 15, 1973.

4. Plaintiff's motion filed on March 23, 1973 requesting that a date for taking of depositions be set by this Court.

5. Plaintiff's motion for sanctions filed on March 23, 1973.

The parties have submitted their respective briefs and new documentary evidence and have appeared for oral argument. This Court now rules on the merits of the respective motions.

Our Order of September 28, 1972 held that defendants American and Foreign Insurance Association, hereinafter called AFIA, and Compañía de Seguros "La Continental" had both acted as unauthorized insurers in Puerto Rico and ruled that therefore AFIA was required to post the security bond required of unauthorized insurers by 26 L.P.R.A. § 1006(1) and that "La Continental" was required to file an appearance before this Court following service through the Insurance Commissioner of Puerto Rico as an unauthorized insurer, pursuant to 26 L.P.R.A. § 1005(2).

The Court at that time set forth the facts in this case and ruled on the applicability of sections 303(1), 1006(1), 1005(1), and 329(1) of the Insurance Code of Puerto Rico (26 L.P.R.A.). However, upon reconsideration this Court found that under the provisions of 26 L.P.R.A., Section 303(4), defendants AFIA and "La Continental" were not required to obtain authorization from the Insurance Commissioner in order to transact insurance in Puerto Rico and, therefore, have not acted as unauthorized insurers in Puerto Rico. Our Order of December 20, 1972, consequently, vacated and set aside our Order of September 27, 1972, denied Commercial Insurance Company's motion for security bond and granted Compañía de Seguros "La Continental's" motion to quash summons.

Upon reconsideration, the main issue to be resolved by this Court is whether the provisions of 26 L.P.R.A., Section 303(4) do, in fact, determine that AFIA and "La Continental" were not required to obtain authorization of the Insurance Commissioner in order to transact insurance in Puerto Rico. If the Court so finds, our Order of December 20, 1972 must be affirmed; otherwise, said Order must be vacated and set aside.

As may be recalled, the Court based its determination on the following argument:

1. The only insurance policy which can provide grounds for a finding that AFIA and "La Continental" are "unauthorized insurers" is the policy issued by "La Continental" in favor of codefendant Cristalería Peldar, S. A.

2. The Insurance Code of Puerto Rico specifies the instances where an insurer does not require the authorization of the Commissioner of Insurance in order to transact insurance in Puerto Rico.

3. Section 303(4) of the Insurance Code specifically covers the situation in this case as it provides that: "As to an insurance coverage *on a subject of insurance not resident, located, or expressly to be performed in Puerto Rico at time of insurance,* and solicited, written, and delivered outside Puerto Rico, no such authority shall be required of an insurer as to subsequent transactions in Puerto Rico on account thereof." (Emphasis added.)

4. The insurance policy in question was solicited, written and delivered outside Puerto Rico on December 31, 1966 and, at that time, it covered no subject of insurance resident, located or expressly to be performed in Puerto Rico.

In other words, this Court found that since codefendant "La Continental" issued its policy on December 31, 1966, under the provisions of 26 L.P.R.A. § 303(4), she could not be held an unauthorized insurer because, at that time, the policy did not cover a subject of in-

surance located or expressly to be performed in Puerto Rico. Further, since "La Continental" was not acting as an unauthorized insurer, then codefendant AFIA could not be considered an unauthorized insurer under 26 L.P.R.A., Sec. 1005(1) for her services on behalf of "La Continental."

Plaintiff's motion for reconsideration alleges that this Court committed error in that the applicable policy was not the one issued on December 31, 1966, for said policy expired on December 31, 1967. Plaintiff's position is that the policy applicable to the case at bar was issued by "La Continental" on December 31, 1968, to expire on December 31, 1969, and that at the time of issuance, this policy did cover a subject of insurance to be performed in Puerto Rico and a risk located in Puerto Rico. Therefore, plaintiff argues, the provisions of 26 L.P.R.A. § 303(4) cannot be invoked to maintain that "La Continental" is not an unauthorized insurer in Puerto Rico and that, as a consequence, AFIA cannot be considered an unauthorized insurer either.

Clearly, in order to decide the controversy regarding the provisions of 26 L.P.R.A. Sec. 303(4), this Court must determine if the policy in force at the time liability was incurred (June 23, 1969) was issued on December 31, 1968 rather than on December 31, 1966 and, in either case, whether or not it specifically covered a subject of insurance located or expressly to be performed in Puerto Rico and a risk located therein at the time of issuance.

■ As a general rule, a renewal of insurance, where there is no provision in the policy for its renewal, is a new contract on the same terms as the old one, while renewal in accordance with a policy provision is simply an extension of the old contract. See: Firemen's Ins. Co. v. Floss, 67 Md. 403, 10 A. 139; Epstein v. Northwestern Nat. Ins. Co., 267 Mass. 571, 166 N.E. 749; Farmers Ins. Exchange v. Allstate Ins. Co., D.C.Mich., 143 F.Supp. 213; Okst v. Metropolitan

Life Ins. Co., Sup., 50 N.Y.S.2d 919; International Life Ins. Co. v. Mowbray, 7 Cir., 22 F.2d 952; Steele v. Great Eastern Casualty and Indemnity Co., 158 Minn. 160, 197 N.W. 101; Maryland Medical Service, Inc. v. Carver, 238 Md. 466, 209 A.2d 582; Rice v. Provident Life and Accident Insurance Co., 231 Mo.App. 560, 102 S.W.2d 147; Pearl Assurance Co. v. School District No. 1, 10 Cir., 212 F.2d 778; Government Employees Insurance Co. v. United States, 400 F.2d 172 (10th Cir. 1968), and March v. Snake River Mutual Fire Insurance Co., 89 Idaho 275, 404 P.2d 614.

■ We must, therefore, address ourselves to the original insurance policy issued by "La Continental" to Cristalería Peldar to determine the actual express agreement as to the duration of the insurance coverage and whether or not said original policy contains any provision for extension of the insurance coverage upon expiration of the original period.

According to the Insurance Code of Puerto Rico, an insurance contract must be construed according to the terms and conditions set forth in the policy and the policy must contain the entire contract —sections 1125, 1118. The policy must specify, among other things, "[t]he time at which the insurance thereunder takes effect and the period during which the insurance is to continue,"—Section 1114(3)(e). The statute also provides that "[a]ny insurance policy terminating by its terms at a specified expiration date and not otherwise renewable, may be renewed . . . for a specific additional period or periods by a certificate or by endorsement of the policy, and without requiring the issuance of a new policy."—Section 1126.

An examination of the policy itself shows that policy No. RC–0328, issued by "La Continental" to codefendant Cristalería Peldar, specifies clearly that said policy shall be in force from December 31, 1966 to December 31, 1967, and that no provision is contained therein as to extension of the policy upon expira-

tion. In fact, the policy specifically states that coverage is limited to the period in which the policy is in force (General Conditions, par. VI). Additionally, the sworn statement of Mr. Pablo Andrade Mejía, President of "La Continental," flatly declares that policy No. RC–0328, issued to Cristalería Peldar, was effective December 31, 1966 and expired on December 31, 1967.

The evidence also shows that policy No. RC–0328 has been renewed five times, each time for a specified period of one year, as expressly stated in the renewal documents. The renewals have been as follows:

| RENEWAL NUMBER | COVERED PERIOD |
|---|---|
| 4322 | From December 31, 1967 to December 31, 1968 |
| 5330 | From December 31, 1968 to December 31, 1969 |
| 6419 | From December 31, 1969 to December 31, 1970 |
| 7894 | From December 31, 1970 to December 31, 1971 |
| 11960 | From December 31, 1971 to December 31, 1972 |

In short, from the evidence now before the Court there is no question that the policy issued on December 31, 1966 expired on December 31, 1967 and that the insurance contract in force at the time liability was incurred was the contract entered into through renewal number 5330, and which covered the period of December 31, 1968 to December 31, 1969.

The question then narrows itself to a determination of whether at the time the applicable contract was issued, it covered a subject of insurance resident, located or expressly to be performed in Puerto Rico.

Examination of the policy terms shows that products liability insurance provisions covered the insured's liability arising from the risks and dangers inherent in the use or consumption of its glass products and that contract liability provisions cover the liability arising from the risks inherent in the fulfillment of the insured's contractual obligations (see original policy endorsements). These original provisions were amended through endorsement No. 6823 of January 9, 1967 which states, in paragraph four:

"(4) The Products Liability Insurance, as per the endorsement attached to the policy, is extended to cover accidents that may occur in foreign countries. In cases of accidents, claims, law-suits, the Insured shall give written notice to the Company at its offices in Colombia. For purposes of premium calculations, the Insured shall likewise declare the amount of product sales for export." (Translation ours.)

In addition, paragraph eight of this same endorsement states:

"(8) This policy is automatically extended to cover the insured's liability arising from the risks and dangers inherent in the execution of the contracts entered into during the period of insurance coverage, which contracts form an integral part of the policy. The insured is hereby bound to forward to the Company an authentic copy of the contracts, within thirty working days of entering into them. The lack of said notifications shall leave the Company free to deny the claims that may arise from the execution of said contracts." (Translation ours.)

Clearly, under the policy terms thus amended, Cristalería Peldar had to declare the amount of its export sales, so that "La Continental" could determine the applicable premiums, and had to forward "La Continental" an authentic copy of all sales contracts within thirty working days of entering into them, in order to insure contract liability coverage under the policy. These liability coverage provisions remained unaltered when the policy was renewed on December 31, 1968. In fact, it was not until January 3, 1972 that a change was made, when products liability coverage was restricted to sales within Colombia by virtue of endorsement No. 171 94, which "provisionally" and until the new premiums could be computed, renewed the policy, so modified.

The evidence now before the Court shows that prior to December 1968

Cristalería Peldar had been successful in developing a substantial volume of glass bottle sales to Cervecería Corona in Puerto Rico and that as of December 30, 1968, it had already billed Cervecería Corona for a total sum of $115,308.49. Thus, based on this one customer only, and even assuming there were no others Cristalería Peldar had achieved a substantial volume of business in Puerto Rico when the insurance policy was renewed to cover the period December 31, 1968 to December 31, 1969. The large volume of bottles already sold and billed, in and of itself, constituted a substantial subject of insurance located in Puerto Rico which was covered by the express terms of the policy when it was renewed. Even disregarding the normal expectations of a continuing and possibly increasing volume of sales to this and other customers, there is no question that the product liability risk arising from the bottles already sold was a subject of insurance resident and located in Puerto Rico which was expressly covered under the terms of the policy when it was issued by "La Continental" through renewal number 5330. This fact cannot be deemed unknown to "La Continental" at the time, since the terms of the policy assured full knowledge of both the volume of export sales as well as the actual location of the customers.[1]

This Court, therefore, concludes that since the time "La Continental" issued its policy in favor of Cristalería Peldar, said policy provided coverage on a subject of insurance located and expressly to be performed in Puerto Rico, the provisions of 26 L.P.R.A. Section 303(4) cannot be invoked to maintain that "La Continental" has not acted as an unauthorized insurer in Puerto Rico. The provisions of Section 303(4) simply do not cover the situation present in this case and, under the applicable provisions of the Insurance Code, "La Continental" has indeed acted as an unauthorized insurer in Puerto Rico.

Reviewing these provisions, we note that:

Section 105 states: "Contracting or transacting," with respect to insurance, includes . . . "(4) Insuring, (5) Transaction of matters subsequent to execution of the contract and arising out of it."

Section 106 states: "No person shall engage in the business of isnurance in Puerto Rico, or relative to a subject of insurance resident, located, or to be performed in Puerto Rico, without complying with the applicable provisions of this title."

Section 303(1) states: "No person shall act as an insurer and no insurer shall transact insurance in Puerto Rico except as authorized by a subsisting authority granted to it by the Commissioner, except as to such transactions as are expressly provided for in this title."

Section 329(1) states: "No insurer shall effectuate any direct insurance upon or relative to any person, property, or other subject of insurance resident, located, or to be performed in Puerto Rico, except through a licensed agent of such insurer residing in Puerto Rico."

This Court holds that, in view of these provisions, it cannot be doubted that Compañía de Seguros "La Continental" became an unauthorized insurer in Puerto Rico when it knowingly issued an insurance policy which covered a subject of insurance located and expressly to be performed in Puerto Rico. It clearly was not necessary for "La Continental" to deliver, effectuate, or solicit an insurance contract in Puerto Rico in order to become an unauthorized insurer in Puerto Rico. The violation of Section 303(1) and 329(1) of the Insurance Code, in view of the requirement of Section 106 and the definition in Section 105, is sufficient.

■ Further, this Court finds that once an insurer is held to be an unau-

---

1. This knowledge also makes completely frivolous defendant's claims of lack of knowledge in trying to give the impression that they were unaware of the risks in Puerto Rico.

thorized insurer in Puerto Rico, he is subject to the service of process provisions of Section 1005(1). Said section states:

"Delivery, effectuation, or solicitation of any insurance contract, by mail or otherwise, within Puerto Rico by an unauthorized insurer, or the performance within Puerto Rico of any other service or transaction connected with such insurance by or on behalf of such insurer, shall be deemed to constitute an appointment by such insurer of the Commissioner as its attorney-in-fact upon whom may be served all lawful process issued within Puerto Rico in any action or proceeding against such insurer arising out of any such contract or transaction, or in any action or proceeding instituted to obtain the annulment of said contract."

Defendant "La Continental" maintains that this provision applies *only* when a contract of insurance is delivered, effectuated, or solicited within Puerto Rico by an unauthorized insurer. We do not agree. Although the wording is awkward and can, literally read, lead to such a conclusion, such a conclusion cannot stand. If the intention of the statute were to provide the special process *only* in cases where the unauthorized insurer delivered, effectuated, or solicited the contract in Puerto Rico, the phrase "or the performance within Puerto Rico of any other service or transaction connected with such insurance by or on behalf of such insurer" simply would not have been inserted at all since it would be completely redundant. That is, if the performance in Puerto Rico of any service or transaction connected with an insurance contract by or on behalf of an unauthorized insurer results in the appointment of the Insurance Commissioner as attorney-in-fact for purposes of service of process *only* when the insurance contract was delivered, solicited, or effectuated in Puerto Rico, the provision is completely superfluous since the statute already provides that said delivery, solicitation, or effectuation of an insurance contract of and by itself causes

such appointment of the Insurance Commissioner.

Further, if we refer to Section 1002 we find the following provision regarding access to court in Puerto Rico:

1. An unauthorized insurer shall not maintain an action in Puerto Rico with respect to any insurance coverage which at the time of issuance was to cover any subject resident, located, or to be performed in Puerto Rico, *but such insurer may defend an action as provided in Sections 1005 and 1006.*

■ Since in view of Sections 105, 106, 301, and 329 of the Code an insurer does not have to deliver, effectuate, or solicit an insurance contract in Puerto Rico in order to become an unauthorized insurer, nor is Section 1002(1) restricted to such contracts, the special service of process provisions of Section 1005(1) must be understood to apply to all unauthorized insurers. In other words, viewing all these provisions of the Code as a coherent and consistent whole, we hold that Section 1005(1) establishes that the Commissioner of Insurance is to become attorney-in-fact of an unauthorized insurer *either* through the solicitation, effectuation, or delivery of an insurance contract within Puerto Rico by said insurer *or* through the performance within Puerto Rico by or on behalf of said insurer of any other service or transaction connected with an insurance contract issued by said insurer on a subject of insurance located, resident, or to be performed in Puerto Rico.

■ We must now turn to the allegation of codefendant "La Continental" that a direct action suit against an insurer is barred in view of the decision of this Court in the case of Torres v. American Service Mutual Ins. Co., 294 F.Supp. 635 (1968).

Defendant claims that according to the law therein settled " . . . it appears that the direct action against the non-resident insurer not authorized to transact insurance in Puerto Rico was not what the law makers had in mind."

We do not agree, as the case at bar can easily be distinguished from the *Torres* case. In *Torres,* an Alabama corporation had issued a liability policy to a resident of Alabama against claims arising from damages caused by the operation of his automobile. The policy was issued and the insurance premiums were paid in Alabama and the insurer was not authorized to transact insurance in Puerto Rico and had no agents, office, or representatives in Puerto Rico. When later an accident occurred in Puerto Rico which caused injuries, the Alabama corporation was sued pursuant to 26 L.P.R.A. § 2003(1). The defendant moved to quash service of summons under Rule 4.7(a)(3) of the Rules of Civil Procedure of Puerto Rico, claiming that under the Rule, personal jurisdiction could be acquired over the non-resident driver who meets with an accident while by himself or through his agent driving in Puerto Rico, but not over the insurer which has no contacts whatsoever with the forum. This Court correctly granted the motion in that case, stating:

> "*The peculiar circumstances of this case* are not reached either by Rule 4.-7 . . . or by the specific process provisions of the Insurance Code . . . . *If there were a statutory provision upon which such an insurer could be reached by process* then both provisions, read in conjunction, could reasonably be construed to include the insurer." (Emphasis added.)

But the instant case is different because under the provisions of the Insurance Code that we have amply discussed above (Sections 105, 106, 303, 329, 1002, and 1005), "La Continental" has acted as an unauthorized insurer in Puerto Rico and is subject to service of process as such through the Insurance Commissioner. Clearly, it follows that "La Con-tinental" can also be served process under Rule 4.7(a)(1) of the Rules of Civil Procedure of Puerto Rico, which allows personal jurisdiction to be acquired over a non-resident when by himself or through his agent he carries out business transactions in Puerto Rico.

Similarly, the case at bar differs radically from the *Torres* case, specifically because "La Continental" transacted insurance in Puerto Rico without authorization when it knowingly issued coverage of a subject of insurance located in Puerto Rico. The non-resident insurer in the *Torres* case, on the other hand, did not at any time transact insurance without authorization in Puerto Rico as it did not issue coverage of a subject of insurance located or expressly to be performed in Puerto Rico. Since the situation in the *Torres* case fell squarely under 26 L.P.R.A. Section 303(4), plaintiff could not serve process under either Rule 4.7(a)(1) or Section 1005(1) of the Insurance Code, and tried without success to utilize Rule 4.7(a)(3) which was not applicable.

This Court finds, therefore, that in this case "La Continental" could be served process under Rule 4.7(a)(1) of the Rules of Civil Procedure of Puerto Rico, as well as under the special provisions of 26 L.P.R.A., Section 1005(2).

Plaintiff's motion to vacate order is granted and, for the reasons stated herein, the order of September 28, 1972 is reinstated. On the pending discovery matters, the Court rules that the out of Puerto Rico residents whose depositions plaintiff wishes to take must be examined in their place of residence. If plaintiff wishes to examine them in Puerto Rico, it must pay their expenses. The parties are instructed to meet and arrange for the depositions in accordance.

It is so ordered.