Thomas J. MUNDY, Jr., et al.,
Plaintiffs, Appellants,

v.

LUMBERMAN'S MUTUAL CASUALTY
CO., Defendant, Appellee.

No. 85–1588.

United States Court of Appeals,
First Circuit.

Argued Dec. 3, 1985.
Decided Feb. 13, 1986.

Wendy P. Solovay, Boston, with whom Marshall F. Newman and Newman & Newman, P.C., Boston, were on brief for appellants.

Brian R. Merrick with whom Burke, Wieners, Moran, Hurley & Merrick, Boston, was on brief for appellee.

Before COFFIN, BREYER and TORRU-ELLA, Circuit Judges.

BREYER, Circuit Judge.

Thomas Mundy, an assistant district attorney of Suffolk County, Massachusetts, and his wife, Madelon, have sued their insurer in an effort to recover the actual value of some silver that was stolen from their home. Since the policy in effect at the time of the burglary limited recovery for loss of silverware to $1000, the company refused to pay them any more. The Mundys noted, however, that an earlier policy had not contained such a limit. They argued that the company did not give them adequate notice of the change when it sent them the policy renewal. And, this failure, in their view, entitles them to recovery under state law theories of contract, tort or unfair trade practice.

The district court granted the company's motion for summary judgment, for the court believed that the record showed—beyond genuine dispute—that the company's notice was adequate. The Mundys now appeal that decision.

The Mundys say in their brief that the "declarations page" of the policy (which they received) said nothing about the change, though "apparently ... there was buried in the fine print of the policy a limitation of $1,000.00 with respect to a loss of silverware." The policy itself, however, tells a rather different story.

Mundy testified that Exhibit 4 was the very policy he received "in the form in which [he] ... received it." On the jacket (apparently the inside cover) is a table of contents. The page also contains five short sentences in capital letters at its bottom. Four of those sentences read as follows:

THIS IS A NEW EASY TO READ POLICY. PLEASE READ YOUR POLICY. THERE ARE SOME COVERAGE CHANGES. IF THERE ARE ANY QUESTIONS, CALL YOUR AGENT OR THE COMPANY RIGHT AWAY.

There follows a declarations page containing the cost of premiums for coverages in effect. The declarations page is followed by two slips of paper (about half the ordinary page size) each with one or two sentences (about inflation protection and non-residential theft). Then, there is a one-page summary of the changes made. Each change noted in the summary is in a separate paragraph, set off from the others by added space and black dots. The relevant paragraph says:

Theft of silverware and guns is now limited to $1,000. Should you wish more coverage for such items, contact your agent.

The remainder of the booklet consists of the twelve-page policy itself. On page 2, the policy says:

*Special Limits of Liability* ...

7. $1000 for loss by theft of silverware, silverplated ware, goldware, gold-plated ware and pewterware.

The whole policy is written in readable English in good-sized print with certain words, such as "Special Limits of Liability," set off in boldface type.

We find nothing in the record that fairly can be read as disputing these facts. Mundy at one point said that the summary of changes was stapled "somewhere" in the policy; but the word "somewhere" is consistent with his concession that Exhibit 4 presents the pages in the proper order. As the district court noted, these facts bring this case well within the scope of *Epstein v. Northwestern National Insurance Co.*, 267 Mass. 571, 166 N.E. 749 (1929), which binds an insured by the terms of a renewal insurance policy as long as he receives it.

The Mundys argue that *Epstein* is now out of date and a minority position. As Mundy recognized, these are not adequate reasons for disregarding Massachusetts case law. Nor do we believe the question should be certified to the Massachusetts Supreme Judicial Court, Mass.S.J.C. Rule 1:03, for, in any event, the Mundys cannot prevail. The facts here make this case

very similar to *GEICO v. United States,* 400 F.2d 172, 175 (10th Cir.1968), where even "a casual reading of the mailed material" would have given the plaintiffs adequate notice. And, we find nothing in the cases they cite from other jurisdictions that would require a different result. *Compare Noyes Supervision, Inc. v. Canadian Indemnity Co.,* 487 F.Supp. 433, 436 (D.Colo. 1980) (endorsement not added until *after* loss); *Giles v. St. Paul Fire & Marine Ins. Co.,* 405 F.Supp. 719, 725–26 (N.D.Ala.1975) (coverage change not included in summary of changes, therefore insurer bound by original policy as modified according to summary); *Pennsylvania Millers Mutual Ins. Co. v. Dunlap,* 153 Ga.App. 116, 264 S.E.2d 483 (1980) (endorsement limiting liability for silverware not received); *Industro Motive Corp. v. Morris Agency, Inc.,* 76 Mich.App. 390, 256 N.W.2d 607 (1977) (insurer estopped from relying on 20 percent coverage limitation in policy because of affirmative representations that insured was 50 percent covered); *Canadian Universal Ins. Co. v. Fire Watch, Inc.,* 258 N.W.2d 570, 574 (Minn.1979) (undisputed that no notice given); *Bauman v. Royal Indemnity Co.,* 36 N.J. 12, 174 A.2d 585, 591–92 (1961) (insured not bound by terms of renewal policy *unless* notice that there are changes in coverage is given); *Aetna Ins. Co. v. Lythgoe,* 618 P.2d 1057 (Wyo. 1980) (no dispute that insured's attention was not specifically directed to coverage change).

The judgment of the district court is *Affirmed. Double costs to Appellee.*